Samuels, J.
This cause is brought here by appeal from a decree of the Circuit court of Floyd county, in a suit wherein John Helms and wife (in right of the wife) were complainants, and Susannah Livesay and others were defendants, brought for an account and distribution of Peter Livesay’s estate ; he being dead intestate, and the parties being his next of kin and his administrator de bonis non. The principal subject of controversy was the issue of a slave named Julia. On behalf of the administrator de bonis non, and the next of kin other than Susannah Livesay the widow, it was insisted that the slave Julia had been given to Peter Livesay by John McGehee about the year 1800, on Livesay’s marriage with the defendant Susannah, the daughter of McGehee. That on Livesay’s death in 1828, his widow and son George W. Livesay were appointed administratrix and administrator of his estate, and as such took into their possession the slaves in controversy. That they had failed to make distribution or to account for hires; and that the appellant had appropriated to herself exclusively the services of the slaves.
The defendant Susannah Livesay denied the alleged gift by her father John McGehee. She averred that the slave was only loaned to her husband and herself by her father, on their promise to return her if required to do so. That her father (who died a few months before the death of Livesay), by his last will and testament, a copy of which is filed as an exhibit, bequeathed Julia and her increase to her for life, with *443 remainder to her children. That immediately after the death of her husband she took the slaves into her own exclusive possession, claiming them as her own for life, under the will of her father. That her co-administrator George W. Livesay, who attended exclusively to the administration of the estate, acquiesced in her claim of title and possession. That her possession and claim of title continued from Livesay’s death in 1828 until the month of August 1834, when the grant of administration to herself and George W. Live-say was duly revoked, and John Helms (one of the complainants) was on the same day appointed administrator de bonis non of Peter Livesay’s estate. That her possession was not interrupted by the revocation of her powers; but continued as before until the bringing of this suit in 1848. She relies upon the statute of limitations as a bar to the relief sought.
On behalf of the complainants it is alleged in an amended bill, that the female complainant was a married woman at the time her rights accrued, and has so continued ever since; and that thus dier rights were within the saving of the statute of limitations.
The case turns upon the questions whether Peter Livesay had any property in the slaves either absolute or for the life of his wife. If he had such property, then whether the claims of his administrator de bonis non and of his next of kin are barred by the statute of limitations.
The evidence is not very clear to show whether Livesay had the absolute right of property in the subject of controversy. It seems, however, that the weight of direct testimony is against such right. In regard to the estate for life of his wife, it must be said, that he could have no such right without the assent of McGehee’s executors to the bequest to Mrs. Livesay; and it is not shown, by direct proof, that such assent was given; nor can it be presumed from *444 the short interval of time between McGlehee’s death and the death of Livesay. The long continued and exclusive possession of Mrs. Livesay, apart from any effect under the statute of limitations, affords a strong presumption of right to the subject in her. Some of the parties now claiming against her were sui juris, and their acquiescence and that of his co-administrator, should be construed into an acknowledgment of her right.
It remains to consider whether the appellant is protected by the statute of limitations, if the slaves belonged to the estate of her intestate. After her removal from the office as administratrix, and after the appointment of John Helms to the office of administrator de bonis non, her relations to the estate itself and to the next of kin, were greatly changed. She was no longer a trustee having title to and holding the unadministered assets in trust for the next of kin : the title, by operation of law, was vested in the administrator de bonis non. See Wernick v. McMurdo, 5 Rand. 51. He might, by action of detinue, have recovered of her the slaves, and damages for detention. The next of kin could bring no available suit in equity against her without having the administrator de bonis non before the court. Samuel v. Marshall, 3 Leigh 567; 2 Lomax Ex’ors 514. In him was vested the legal title which a court of equity, on showing a proper case, would cause to be conveyed to those having the right. The next of kin could bring no suit at law against a party holding assets of the estate; their right and remedy is through the personal representative. See authorities above cited. The possession of Mrs. Livesay from 1834 to 1848, was adverse to the administrator de bonis non, and was of sufficient length of time to bar his action against her. No fraud, collusion or other thing is shown to deprive her plea of the statute of limitations of any part of its efficacy. *445 The coverture of the female complainant, if proved, would not avail to prevent the operation of the plea in this case, seeing that her rights are represented by the administrator de bonis non, and by her husband, who are sui juris and barred by the statute.
It is not necessary for any purpose in this case to consider whether the possession of Mrs. Livesay, during her continuance in office, adverse in fact, was also adverse in law so as to bar the next of kin.
On the whole case, I am of opinion, that Peter Live-say had no title at all to the slaves in controversy, And if this fact were otherwise, I am further of opinion, that any right derived from Livesay is barred by the statute of limitations; and thus there was no •cause of action existing against Susannah Livesay at the time this suit was brought. I am of opinion to reverse the decree of the Circuit court, so far as it directs the surrender of the slaves, and an account of their hires, and to dismiss so much of the bill as prays for the slaves and their hires, but without prejudice to the right of any party to his or her rights in remainder to the slaves after the death of Mrs. Livesay, and to remand the cause for further proceedings as to other subjects passed on by the decrees.
Daniel and Lee, Js. concurrred in the opinion of Samuels, J.
Moncure, J. concurred in the results, on the first ground stated in the opinion.
The decree is as follows :
The court is of opinion, for reasons stated in writing, and filed with the record, that said decrees are erroneous in so far as they adjudge the question of title to the slaves in controversy against the appellant, and direct a surrender of said slaves, and an account of *446 their hires. It is therefore adjudged, ordered and decreed, that said decrees, so far as they'are herein declared to be erroneous, be reversed and annulled; and that the appellee John Helms, administrator de lonis non of Peter Livesay deceased, out of the assets in his hands to be administered, and' the other appellees, out of their own proper estates, do pay to the appellant her costs in this court expended. And the court, proceeding to render such decree as the Circuit court should have rendered, instead of so much of said decrees as is herein declared to be erroneous, it is further decreed and ordered, that so much of the original and amended bills as seeks to recover the slaves, Julia and her increase, and hires of the slaves, be dismissed ; but without prejudice to the rights in remainder after the death of the life tenant. And the court being of opinion there is no other error in said decrees, it is further adjudged, ordered and decreed, that the residue thereof be affirmed, and the cause remanded for further proceedings to be had therein in conformity with this decree.